MATILDE PABÓN AND MALAVÉ, Appellant, v. THE REGISTRAR OF PROPERTY OF MAYAGÜEZ, Respondent.

No. 1289.    Submitted January 26, 1953.—Decided November 10, 1953.

436

*José Sabater* for appellant.    The Registrar appeared by brief.

MR. JUSTICE BELAVAL delivered the opinion of the Court.

On December 22, 1948, by authorization of the former District Court of Mayagüez, Matilde Pabón Malavé, assisted by Atilano Fernández, her present husband, executed a mortgage in favor of Carlos Pablo and Ibet Emilia Mántaras Pabón, the minor children of Matilde Pabón and her former husband, on two urban properties, one of which was the private property of Matilde Pabón and the other of the conjugal partnership constituted by her and her present husband, Atilano Fernández.    On July 26, 1951, by deed No. 106, Matilde Pabón Malavé emancipated the minors Carlos Pablo and Ibet Emilia Mántaras Pabón before Notary José Sabater. By deed No. 46, executed on March 17, 1952 before Notary José Sabater, Ibet Emilia Mántaras Pabón, in her own right and in her capacity as attorney-in-fact of her brother, Carlos Mántaras Pabón, cancelled the aforesaid mortgage.    Her mother, Matilde Pabón Malavé, appeared in the deed of cancellation for the purpose of conferring power on her emancipated minor daughter to cancel the mortgage which had been executed by the said Matilde Pabón Malavé.

Upon presentation of the deed of cancellation of mortgage in the Registry of Property of Mayagüez, recordation was denied on the ground that the mother of the emancipated minors who appeared for the purpose of authorizing her daughter to effect the cancellation, was the debtor in the mortgage sought to be cancelled.    Aggrieved by the refusal of the Registrar of Property of Mayagüez, José M. Ramírez de Arellano, Matilde Pabón Malavé appeals to this Court by way of this administrative proceeding and requests us to set aside the Registrar's note refusing to record the document.

Under § 237 of the Civil Code of Puerto Rico, a minor who has been emancipated by the father or the mother

having the *patria potestas* cannot encumber or sell his real property without the consent of his father, or in default thereof, without the consent of his mother, and in the proper case without the consent of the special tutor that may be designated. There is not the least doubt that the cancellation of a mortgage is an act of ownership and at the same time of alienation, according to our civil law. *Pillich* v. *Registrar*, 68 P.R.R. 521, 525 (De Jesús), (1948). There is not the least doubt either that a minor emancipated for the purpose of managing its own property can not cancel a mortgage created in his favor without the consent of his legal representative. *González* v. *Registrar*, 37 P.R.R. 805, 808 (Aldrey), (1928). It is true that in the present case the minor who has been emancipated by the mother appears assisted by the latter but she appears assisted by the mother for the purpose of cancelling a mortgage executed by the mother herself. The Civil Code of Puerto Rico contains no provision as to the manner in which the lack of capacity of the emancipated minor may be remedied whenever his interests are opposed to those of his father or of his mother. *Lebrón* v. *Registrar*, 63 P.R.R. 346, 350, (Travieso), (1944).

We meet here with one of those odd forms known in civil law as self-contract, namely, a contract whereby a person may contract with himself without the meeting of the minds presupposed by the contract. Needless to say such an anomaly should not be treated favorably within the general theory of obligations.

The prohibition of our Civil Code to the effect that an emancipated minor may not himself execute an act of dominion and alienation of real property, is a protective measure to remedy the presumptive lack of capacity of the emancipated minor. Emancipation by the parents is "a juridical condition of truly limited capacity, an intermediate condition, in which the minor has the exercise of his civil rights not to the fullest extent but one to a certain degree.

2 Manresa 751 (Edition by Editorial Reus, 1944). The intention of the Code has been to substitute that limited capacity for the best experience and the most thorough knowledge of the juridical business which the father, the mother or the guardian may have. If the person called upon to substitute that lack of capacity happens to be the same person on whose behalf the alienation is made, it is unquestionable that the fundamental purpose of the lawmaker is defeated.

We have found nothing in our case law which would call for a re-examination to conform to the spirit of modern times. On the contrary, we believe that the rule established by this Court that in case of any conflict between the interests of the emancipated minor and those of his parents a tutor or guardian *ad litem* should be appointed, should be sustained not only for the benefit of the moral soundness of the paterno filial institution but also to safeguard the principle bearing on the meeting of the minds in matters of contract. It is unquestionable that an emancipated minor, who is to a certain extent subject to the paternal or maternal authority, would never have the same freedom to contract with his parents that he would with private persons.

The registrar's note is affirmed.